DAVID L. AND FAGALE D. GRANT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grant v. Commissioner
Docket No. 22193-93.
United States Tax Court
T.C. Memo 1995-374; 1995 Tax Ct. Memo LEXIS 376; 70 T.C.M. (CCH) 340; August 8, 1995, Filed *376 William B. Sellers, for petitioners. Horace Crump, for respondent. COUVILLION, Special Trial Judge COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case is before the Court on petitioners' motion for administrative and litigation costs pursuant to section 7430 [1] and Rule 231. Neither party requested a hearing, and the Court concludes that a hearing is not necessary for the proper disposition of this motion. Rule 232(a)(3). There are two issues for decision: (1) Whether petitioners have established that the position of respondent in the underlying tax case was not substantially justified within the meaning of section 7430(c)(4)(A)(i); and (2) if respondent's position was not substantially justified, the amount of petitioners' reasonable administrative and litigation costs, within the meaning of section 7430(c)(1). *377 Background
The merits of the underlying case were decided in , filed January 24, 1995, and, to the extent necessary for the disposition of this motion, the facts and holdings in are incorporated herein by reference. The sole issue in the underlying case was whether the unauthorized distribution of a pension fund of petitioners by the State of Alaska to petitioners' agent, who misappropriated the funds, constituted the constructive receipt of income by petitioners under section 61(a). The Court held that the distribution was unauthorized; that the funds had been misappropriated by petitioners' agent; that petitioners did not know of the distribution; the misappropriated funds were never restored to petitioners; and, since petitioners never received any economic benefits from the misappropriated funds, under , petitioners had not constructively realized income under section 61(a). The first knowledge petitioners ever had of the unauthorized distribution of their pension funds was in February *378 1993 when petitioners received a letter from the Memphis, Tennessee, IRS Center, advising petitioners of a proposed change to their 1990 income tax return to include in income $ 9,309 taxable pension and annuity income resulting from the $ 14,619 pension plan distribution by the State of Alaska during 1990. The proposed change was based upon the reporting on Form 1099-R by the State of Alaska of the $ 14,619 pension plan distribution during 1990. Petitioners contacted the IRS Service Center and were given additional time to explain why the Notice of Proposed Change was in error. Petitioners then contacted the State of Alaska and received copies of documents concerning the withdrawal. Petitioners realized that the withdrawal had not been authorized by them, and petitioner's purported signature on the application for withdrawal had been forged. Petitioners suspected the individual responsible for the unauthorized withdrawal of their account was one of their agents. [2] Petitioners began to send additional information to the State of Alaska hoping to have their account restored because of the forgery.
*379 However, before petitioners could resolve the situation, respondent issued a notice of deficiency, dated July 12, 1993. In the notice of deficiency, respondent determined a deficiency of $ 2,340 in petitioners' Federal income tax for 1990. Respondent determined that, because the $ 14,619.94 distribution was paid to their agent, petitioners constructively received as income during 1990 the taxable portion of the pension distribution. Upon receipt of the notice of deficiency, petitioners employed an attorney, a Mr. Weiss, who sent a letter and documentation to respondent explaining why the deficiency notice was in error. Mr. Weiss' letter, dated September 7, 1993, stated that "the $ 14,000.00 withdrawal was a fraudulent withdrawal of the insurance agent." Further, the letter stated that "The taxpayer retained litigation counsel who pursued an action against the insurance agent and his company with respect to the fraudulent withdrawal and other matters." The letter also stated that the State of Alaska Retirement System was in the process of making a determination as to whether it would pursue a forgery claim against the bank that cashed the check from the State of Alaska Retirement *380 System. Mr. Weiss explained that it was his understanding that the State of Alaska planned to reinstate petitioner's retirement account pending its review of certain information provided to it by petitioner. Mr. Weiss included the following documentation with his September 7, 1993, letter: 1. A copy of a letter from petitioner, dated August 17, 1993, to the State of Alaska Retirement System regarding the forgery of his signature; 2. an Affidavit of Forgery, signed by petitioner; 3. an Affidavit of David L. Grant, which outlines petitioners' situation; 4. a letter to Mr. Daniel Miles II, dated March 26, 1993, from the State of Alaska Division of Retirement and Benefits regarding the documents in its possession; [3]
5. a copy of petitioner's notification of termination of employment; and 6. a copy of the $ 14,619.64 check issued by the State of Alaska with the endorsed "forged" signature of petitioner. In response to Mr. *381 Weiss' letter, respondent sent a letter to petitioners, dated October 5, 1993, which stated that, based upon the information contained in Mr. Weiss' letter, "we are pleased to inform you that we were able to clear up the discrepancy", and "we apologize for any inconvenience we may have caused you, and we thank you for your cooperation". However, at some time thereafter, respondent had a change of mind from the statements made in respondent's letter dated October 5, 1993. This change of mind came about when respondent attempted to verify some of the statements made by Mr. Weiss in his letter to respondent dated September 7, 1993. As a result of respondent's inquiries to the State of Alaska regarding the distribution of petitioners' account, respondent determined that no civil action had been filed against petitioners' agent who had made the unauthorized withdrawal, and that the State of Alaska did not determine that the withdrawal was fraudulent, had not pursued or attempted to make any forgery claim against any bank, and had denied petitioners' request for reinstatement of petitioner's retirement account. As a consequence of these discoveries, respondent refused to concede the issue *382 as had been indicated in respondent's letter of October 5, 1993. [4]
On October 12, 1993, petitioners filed their petition with this Court. On November 24, 1993, respondent requested additional information to support petitioners' assignment of error in the Tax Court petition. Two days later, on November 26, 1993, respondent's answer was filed with this Court. On December 20, 1993, petitioners provided additional information to respondent; however, the record gives no indication what information was actually provided. In any event, on January 4, 1994, respondent informed petitioners that the information was not sufficient to settle the case. On March 25, 1994, respondent subpoenaed all records in the possession of the State of Alaska Retirement System regarding petitioner's retirement distributions. On the same date, respondent subpoenaed the two individuals who were petitioners' agents to appear at the *383 trial of the case. On April 8, 1994, petitioners lodged a consumer complaint against the agent who made the unauthorized withdrawal. However, at the time of trial, there was no docketed criminal or civil action pending against that agent. The trial of the case was held on April 25, 1994. At trial, each of petitioners, as well as the two agents subpoenaed by respondent, testified. In the memorandum opinion of this case, , the Court held that petitioners had met their burden of proving that they never authorized their agent to withdraw their $ 14,619.64 account with the State of Alaska; that petitioners never knew, until they received a letter from the IRS in 1993, that such account had in fact been distributed by the State of Alaska; and that these funds had been misappropriated by their agent. The Court further held that no portion of the account was used by the agent or his company to pay any of petitioners' debts, nor had petitioners realized any other economic benefit from the misappropriated funds; therefore, petitioners did not realize income under section 61(a). The Court, accordingly, held for petitioners *384 on this issue. Discussion
A taxpayer who substantially prevails in an administrative or court proceeding may be awarded a judgment for reasonable costs incurred in such proceedings. Sec. 7430(a)(1) and (2). A judgment may be awarded under section 7430 if a taxpayer (1) was the "prevailing party", (2) exhausted the administrative remedies available to the taxpayer within the Internal Revenue Service, and (3) did not unreasonably protract the proceedings. Sec. 7430(a), (b)(1), (4). Respondent concedes that petitioners exhausted the administrative remedies available and that they did not unreasonably protract the proceedings. Therefore, the Court must decide whether petitioners were the prevailing party. To qualify as the "prevailing party", the taxpayer must establish that (1) the position of the United States in the proceeding was not substantially justified; (2) the taxpayer has substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (3) the taxpayer satisfies the applicable net worth requirements. Sec. 7430(c)(4)(A). Respondent concedes that petitioners meet the second and third criteria *385 listed above. Respondent argues, however, that the position taken by respondent in the proceedings was substantially justified. Rule 232(e); ; , affd. . Accordingly, the issue is whether "the position of the United States in the proceeding was not substantially justified." Sec. 7430(c)(4)(A)(i). In deciding this issue, the Court must first identify the point in time at which the United States is considered to have taken a position and then decide whether the position taken and maintained from that point forward was not substantially justified. The "not substantially justified" standard is applied as of the separate dates that respondent took a position in the administrative proceeding and the proceeding in this Court. Sec. 7430(c)(7)(A) and (B); . For purposes of the administrative proceeding, respondent took a position on July 12, 1993, the date of the notice of deficiency. Sec. *386 7430(c)(7)(B). For purposes of the proceeding in this Court, respondent took a position on November 26, 1993, the date respondent filed the Answer. See , affg. in part, revg. in part on other grounds and remanding . In this case, respondent's position on each of these dates was the same. More specifically, respondent's position was that petitioners had constructively received as income during 1990 the taxable portion of the pension distribution because the $ 14,619.94 distribution had been paid to petitioners' agent. Whether respondent's position was not substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as the legal precedents relating to the case. ; , affd. . A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person." ; *387 . A position that merely possesses enough merit to avoid sanctions for frivolousness will not satisfy this standard; rather, it must have a "reasonable basis both in law and fact". . The Court must "consider the basis for respondent's legal position and the manner in which the position was maintained". . The fact that respondent eventually loses or concedes the case does not establish an unreasonable position. ; , vacated on other issues . The reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at the time. Cf. ; . The taxpayer has the burden *388 of establishing that respondent's position was unreasonable. Rule 232(e). Petitioners have not argued that respondent's position was not reasonable as a matter of law. The Court turns, therefore, to the question of whether respondent's position was unreasonable as a matter of fact. 1. Administrative Costs
In deciding whether petitioners are entitled to administrative costs, we take into account the information available to respondent from the date the notice of deficiency was mailed, July 12, 1993. Petitioners' attorney sent respondent a letter with documentation, as outlined above, on September 7, 1993. Based on this information, respondent issued the letter to petitioners, dated October 5, 1993, which stated that the "discrepancy" had been resolved. However, respondent discovered thereafter that the facts were not as they had been represented in the letter of September 7, 1993, from petitioners' attorney, Mr. Weiss. As a result, respondent did not concede the issue. Respondent did not receive any additional evidence from petitioners prior to the date the Answer was filed, on November 26, 1993. Based on the record, the Court finds that respondent's position was reasonable *389 in the administrative proceeding. The fact the respondent was ready to concede the issue in the letter of October 5, 1993, demonstrates respondent's reasonableness. Respondent's decision not to concede the issue changed only after respondent made inquiries with the State of Alaska regarding the distribution of petitioner's account, as well as other inquiries from which respondent concluded that the matter had not been resolved as represented in Mr. Weiss' letter. Petitioners did not present any evidence to show that these problems were resolved prior to the filing of the Answer. As a result, the Court finds that respondent's position in the administrative proceeding was substantially justified. Accordingly, petitioners are not entitled to administrative costs. 2. Litigation Costs
With respect to litigation costs, the Court must look to the information available to respondent at the time the Answer was filed, November 26, 1993, and from that point forward. Respondent received additional documentation from petitioners on December 20, 1993. However, petitioners failed to establish what information was actually provided to respondent on that date. Therefore, the Court is unable *390 to determine if the information provided to respondent at that time was sufficient to warrant respondent's concession of the issue. After December 20, 1993, respondent did not receive any other information from petitioners until the trial on April 25, 1994. The testimony presented at trial, while important to the Court's decision on the merits, does not persuade us that respondent was unreasonable in defending the case. Accordingly, the Court finds that, as a matter of fact, respondent's litigation position was reasonable. Petitioners failed to prove that respondent's position, with respect to litigation costs, was not substantially justified. As this Court has decided that respondent's position was substantially justified in both the administrative and Court proceedings, it is not necessary for the Court to decide the amount of petitioners' reasonable administrative and litigation costs. An appropriate order and decision will be entered.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See , on the merits for an explanation of petitioners' suspicions.↩
3. Mr. Daniel Miles II, was petitioners' attorney prior to their engagement of Mr. Weiss.↩
4. There is no indication in the record that respondent advised petitioners of this change of position at the time.↩